06cv17087a-CarnRemand.wpd

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES CARN, et al.,** | : | Case No. 1:06-CV-17087 |
| Plaintiffs, | : | |
| v. | : | |
| **BOC GROUP, et al.,** | : | |
| | : | **Judge Kathleen M. O'Malley** |
| Defendants. | : | |
| | : | **MEMORANDUM & ORDER** |
| | : | |

For the reasons stated below, the Court agrees with plaintiff Carn that there is no federal jurisdiction in this case. Accordingly, Carn's motion to remand (docket no. 3) is **GRANTED** and this case is **REMANDED** to the Philadelphia County (Pennsylvania) Court of Common Pleas, where it was originally filed.

**I.  Background.**

Plaintiff James Carn brings this action against six defendants.[1] Five of the defendants are or were

---

[1] Carn's wife, Antoinette, joins him as a plaintiff. For simplicity, however, the Court refers to Carn as the sole plaintiff. Further, Carn lists as a defendant in the caption of his complaint the Stultz-Sickles Steel Company ("SSSC"). Carn makes no reference at all to SSSC in the body of his complaint, however, and the existence of SSSC as a defendant is immaterial to the Court's analysis, so the Court does not refer again to SSSC in this Order.

manufacturers of welding rods: (1) BOC Group; (2) General Electric; (3) Hobart Brothers; (4) Lincoln Electric; and (5) Westinghouse Electric Corp. (n/k/a CBS Corp.). Carn also names as a defendant his employer, the National Railroad Passenger Corporation, commonly known as "Amtrak."

Carn filed his original complaint in Pennsylvania state court, asserting that, while working as a track-man for Amtrak, he developed neurological injury caused by exposure to fumes given off by the welding rods produced by the five manufacturing defendants. Carn's complaint contains two counts: (1) a negligence claim against Amtrak, pursuant to the Federal Employers Liability Act ("FELA"), 45 U.S.C. §51 *et seq.*; and (2) state law products liability claims against the five manufacturing defendants.[2]

The defendants removed the action from Pennsylvania state court to the United States District Court for the Eastern District of Pennsylvania. Because Carn and defendant Westinghouse are both residents of Delaware, the defendants could not remove based on federal diversity jurisdiction.[3] Rather, defendants' based their removal on the presence of a substantial federal question. Specifically, Carn includes in his product liability count an allegation that the labels on the manufacturing defendants' welding rods "failed to comply with the Federal Hazardous Substance Act ["FHSA"], 15 U.S.C. §1261 *et seq.*;" the defendants assert this Court will thus have to interpret and apply FHSA, in order to determine

---

[2] The latter paragraphs of Count II, which are mis-numbered, also make reference to a claim for conspiracy under state law.

[3] The parties agree that the FHSA does not provide a private cause of action, so federal jurisdiction cannot be asserted under that statute. 15 U.S.C. §1268. Further, Carn's FELA claim is not removable by virtue of 28 U.S.C. §1445(a). *See Bell v. Illinois Cent. R. Co.,* 236 F.Supp.2d 882, 892 (N.D. Ill. 2001) (§1445(a) makes non-removable "actions for injuries suffered by employees of railroads and other common carriers in the course of their employment"). Defendants assert that, while Carn's FELA claim may not be removable *by itself*, Carn's product liability claims are removable, and his FELA claim is then removable as a pendent claim under the Courts's supplemental jurisdiction. Given the Court's conclusion that Carn's product liability claims are not removable and that his entire action must be remanded, the Court need not resolve this issue.

the viability of Carn's state-law claims.

After the defendants removed Carn's case to the Pennsylvania federal district court, the Judicial Panel on Multi-District Litigation transferred the case to this Court, as related to MDL No. 1535, *In re: Welding Fumes Prods. Liability Litigation*. Carn then moved to remand the case back to Pennsylvania state court, asserting there is no federal jurisdiction and the defendants' removal was improper.

For the reasons stated below, the Court agrees with Carn that there is no substantial federal question jurisdiction in this case.

**I.      Count II in Carn's Complaint.**

Count II of Carn's complaint is asserted against the five manufacturing defendants and includes claims based on a variety of state law product liability theories, including defective design, defective manufacture, defective packaging, defective marketing, and failure to warn. In support of these product liability claims, Carn alleges a laundry list of 19 improper acts and omissions by the manufacturing defendants.[4] For example, Carn alleges defendants failed to: (1) ensure "manganese could or wold [sic] not be released into the ambient air during the use of their products;" (2) adequately test their products to ensure users would not inhale injurious fumes; and (3) recall their welding rod products after learning the products could cause neurological injury.[5]

The great bulk of Carn's allegations, however, go to the alleged defective marketing of, and inadequacy of warnings placed upon, the defendants' welding rods. For example, Carn alleges that defendants: (1) "affirmatively misrepresented to plaintiff . . . in advertising, labels and otherwise that their

---

[4] Complaint at ¶28(a - s).

[5] *Id.* ¶28(p), (l) & (j).

3

products were safe in their ordinary and foreseeable use, which material misrepresentation induced plaintiff[] to exposure [sic] [himself] to hazards;" (2) "failed to take any reasonable precautions or to exercise any reasonable care to adequately or sufficiently warn plaintiff[] . . . of the risks, dangers and harms to which [he was] exposed by continuous work with, contact with, use, handling, and exposure to defendants' products and the inhalation of the mixed fumes and dust resulting from the ordinary and foreseeable use of said products;" and (3) "failed and omitted to place warning, or adequate and sufficient warnings, on the containers of said products regarding the risks, dangers, and harm that could result therefrom and the precautions necessary to make said products safe from their ordinary and foreseeable use by the plaintiff[]."[6] Other of Carn's allegations also refer to the product warnings' alleged deficiencies.

Amidst all of these product liability allegations, Carn also alleges the defendants "failed to comply with the Federal Hazardous Substance Act . . . and the Pennsylvania Right to Know Act and Hazardous Sites Cleanup Act."[7] This single reference to the FHSA is the only portion of Carn's complaint that mentions in any way a federal statute or regulation. None of Carn's numerous other allegations, including those specifically directed to a failure-to-warn claim, are linked to any federal law.

**II. Analysis.**

As noted, defendants removed this case to federal court on "substantial federal question" grounds. This removal relies upon the complaint's single reference to the FHSA – defendants argue that Carn's "*entire* state law failure-to-warn claim is premised on the allegation that the defendants violated the

---

[6] *Id.* ¶¶, 28(b), (c), & (e).

[7] *Id.* ¶28(m).

4

standard of care required under the [FHSA]."[8] This is obvious overstatement, as virtually all of Carn's allegations supporting his failure-to-warn claim have nothing at all to do with the FHSA. Similarly, defendants contend that "resolution of [Carn's] state-law negligence claim *necessarily* depends on the interpretation and applicability of the FHSA to the allegations of the complaint."[9] This contention requires an examination of the boundaries of this Court's "federal question" jurisdiction.

As the Supreme Court explained in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, defendants were entitled to remove this case only if Carn "could have brought it in federal district court originally, 28 U.S.C. §1441(a), as a civil action 'arising under the Constitution, laws, or treaties of the United States,' [28 U.S.C. ]§1331."[10] Further, as the Supreme Court explained in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, the question of removal jurisdiction must be determined by reference to the well-pleaded complaint.[11] Here, the complaint does not assert directly any claim premised upon a federal law. There is a type of "arising under" federal jurisdiction, however, that gives this Court the power to adjudicate cases that contain only state law claims, if those claims implicate significant federal issues. As the Court put it in *Grable*, "the [substantial federal question] doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."[12] Defendants rely on this

---

[8] Opposition brief at 1 (emphasis added).

[9] *Id.* at 4 (emphasis added).

[10] *Grable*, 545 U.S. 308, 312 (2005).

[11] *Merrell*, 478 U.S. 804, 808 (1986).

[12] *Grable*, 545 U.S. at 312.

5

doctrine as the basis for their removal.

The substantial federal question doctrine, however, does "not purport to disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."[13] Rather, the relevant inquiry is: "does a state-law claim *necessarily* raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[14] In other words, mere reference to, or reliance upon, a federal statute in support of a state-law claim does not automatically yield federal jurisdiction.

A review of the facts in *Merrell* and *Grable* is instructive. *Merrell* involved state-law claims that rested in part on the plaintiffs' allegation that the defendant drug company had violated the Federal Food, Drug and Cosmetic Act's ("FDCA's") provisions regarding "misbranding." The *Merrell* plaintiffs made reference to the FDCA in only one of their five common law tort claims, but the district court concluded federal jurisdiction existed. In reversing, the Sixth Circuit Court of Appeals stated that, "because the jury could find negligence . . . without finding a violation of the FDCA, the plaintiffs' causes of action did not depend necessarily upon a question of federal law."[15] The Supreme Court agreed, recognizing that a court would have to undertake, at most, only limited application of federal law to decide the case. Importantly, the Supreme Court also deemed it significant that the FDCA did not provide for a private cause of action,

---

[13] *Merrell*, 478 U.S. at 813.

[14] *Grable*, 545 U.S at 314 (emphasis added).

[15] *Merrell*, 478 U.S. at 807 (quoting 766 F.2d 1005, 1006 (6th Cir. 1985)).

evidencing a Congressional intent not to involve federal courts.[16]

Similarly, *Grable* also involved only a state-law claim – specifically, an action to quiet title. After the Internal Revenue Service ("IRS") seized some real property from the plaintiff in order to satisfy a tax delinquency, the defendant obtained the property at a tax sale. Thereafter, the plaintiff brought a quiet-title action in state court, claiming the defendant's record title was invalid because the IRS had not given adequate "notice" under 26 U.S.C. §6335(a) before seizing the property. Ultimately, the *Grable* Court concluded that federal jurisdiction existed because the question of whether the plaintiff was given "notice" within the meaning of the federal tax code was an essential element of his claim; indeed, it appeared to be "the only legal or factual issue contested in the case."[17] The *Grable* Court also endorsed *Merrell's* practical observation that violations of federal statutes are often given negligence *per se* effect in state tort proceedings, and "a general rule of exercising federal jurisdiction over [such claims] would . . . herald a potentially enormous shift of traditionally state cases into federal courts."[18]

Applying *Merrell* and *Grable* to the facts of this case, it is clear that Carn's single reference to the FHSA as one of many bases in support of his products liability claims does not give rise to a substantial federal question. Indeed, the facts of this case are highly similar to those of *Merrell*: both cases involve only passing reference to a federal statute, which does not provide for a private cause of action, as one of several grounds in support of various state-law theories. The Sixth Circuit observed in *Merrell* that the plaintiff could prevail on his state-law claims even if a jury were to find there was no misbranding under

---

[16] *Id.* at 812. *See also id.* at 817 ("We conclude that a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'").

[17] *Grable*, 545 U.S at 315.

[18] *Id.* at 319.

7

the FDCA.[19] Similarly, Carn may prevail on his state law product liability claims, including his failure-to-warn claim, even if there is no violation of the FHSA.

In sum, defendants' invocation of substantial federal question jurisdiction in support of removal was not well-taken. The cases that defendants cite are all inapposite or easily distinguishable.[20] Accordingly, this case must be remanded to Pennsylvania state court, where it was originally filed.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE**

**DATED**: December 15, 2008

---

[19] *Merrell*, 478 U.S. at 807 (quoting 766 F.2d at 1006).

[20] For example, defendants cite *Isgett v. Wal-Mart Stores*, 976 F. Supp. 422 (S.D. Miss 1997), for the proposition that there may be federal jurisdiction over state-law claims premised on FHSA violations. The *Isgett* court, however: (1) stated it had both diversity and federal-question jurisdiction; (2) involved plaintiffs who asserted FHSA violations as the sole basis for a single, state-law claim of negligence *per se*; and (3) concluded the FHSA did not provide an implied private cause of action, and dismissed the case (thus suggesting that although diversity jurisdiction existed, federal-question jurisdiction did not exist, after all).